UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE DENISE HOLLOWAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. EDCV 16-93 FFM<br><br>MEMORANDUM DECISION AND ORDER |

　　　　Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying her applications for Disability Insurance Benefits and Supplemental Security Income. Plaintiff and defendant consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the March 8, 2016, Case Management Order, on September 20, 2016, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR"), filed on June 21, 2016, and the Joint Stipulation. For the reasons stated below, the decision of the Commissioner is affirmed.

///

///

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

On October 31, 2012, plaintiff applied for Supplemental Security Income. (AR 101.) Plaintiff's application was denied initially and on review. (AR 101-46.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (AR 164-70.) On March 24, 2014, ALJ Nancy M. Stewart held a hearing. (AR 27-56.) Plaintiff was present with counsel and testified at the hearing. (*See generally id*.)

On September 9, 2014, the ALJ denied plaintiff benefits in a written decision. (AR 8-22.) Based on her review of the evidence, the ALJ determined that plaintiff possesses the residual functional capacity ("RFC") to perform "light work" subject to numerous accompanying limitations. (AR 16.) Ultimately, the ALJ found that plaintiff can perform work that exists in significant numbers in the national economy and, therefore, is not disabled. (AR 20-22.)

On November 27, 2015, the Appeals Council denied review. (AR 1-3.) Thereafter, plaintiff initiated this action.

## CONTENTIONS

Plaintiff raises two contentions in this action:

1. Whether the ALJ improperly determined that plaintiff does not suffer from a severe mental impairment.
2. Whether the ALJ failed to properly consider the opinions of Dr. Pechman.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and

///

evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence in the record can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). However, even if substantial evidence exists to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## DISCUSSION

A. <u>Whether the ALJ Erred in Finding that Plaintiff's Mental Impairments Are Not Severe</u>.

At step two of the five-step sequential evaluation,[2] an ALJ must determine whether any of the claimant's impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Put another way, a claimant's impairment is non-severe if it has "no more than a minimal effect on her ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306-07 (9th Cir. 1988) (adopting SSR 85-28). Additionally, an impairment is not severe if it does not last or is not expected to last "for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The claimant bears the burden of demonstrating that her impairments are severe. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[2] The five-step sequential evaluation process is the multi-level analysis that ALJs employ to determine whether a person is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4). If the ALJ conclusively determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step. *Id.* If the ALJ completes step five and concludes that a claimant's limitations do not preclude work that exists in significant numbers in the national economy, the claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

3

In order to determine an alleged mental impairment's severity, Social Security adjudicators utilize the so-called "psychiatric review technique." Under the technique, adjudicators assess a claimant's mental restrictions in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[3] 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the adjudicator finds that the claimant had no episodes of decompensation and only mild limitations (or none at all) in the other functional areas, the adjudicator will "generally" conclude that the mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Moderate limitations are sufficient to meet the "severe impairment" standard.

Here, the ALJ found no to mild limitations in each of the four broad functional areas. (AR 14.) These findings generally indicate a non-severe finding of mental impairment. Plaintiff does not focus on the ALJ's determination of the four functional areas. Instead, plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Rathana-Nakintara, the consultative examining psychiatrist. However, the ALJ appears to have relied on (or at least accepted) the opinions of Dr. Rathana-Nakintara with respect to the four broad functional areas analyzed at step 2:

> Dr. Rathana-Nakintara diagnosed the claimant with mood disorder, psychotic disorder, polysubstance dependence in sustained remission, and cannabis abuse in sustained remission, and assessed a global assessment of functioning (GAF) score of 65(id.). Based on the examination, she opined the claimant had no difficulties in maintaining social functioning; mild

///
///
///

---

[3] Episodes of decompensation are exacerbations of or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning. 20 C.F.R. Part 404, subpt. P, app. 1, § 12:00(C)(4).

4

|     | difficulties in concentration, persistence and pace; and no difficulties in |
| --- | --- |
| 1   | performing activities of daily living (Exhibit 6F, p. 5). |
| 2   | |

(AR 14.)[4]

Plaintiff focuses on other findings made by Dr. Rathana-Nakintara that plaintiff argues demonstrate that plaintiff's mental impairment is severe. Specifically, plaintiff refers to the following statement made by Dr. Rathana-Nakintara:

> Based on the objective findings presented during this interview, the claimant would have no limitations performing simple and repetitive tasks but mild limitations performing detailed and complex tasks. The claimant would have no difficulties to be able to perform work activities on a consistent basis without special or additional supervision. The claimant would have no limitations completing a normal workday or work week due to her mental condition. The claimant would have moderate limitations accepting instructions from supervisors and interacting with coworkers and with the public due to her having auditory hallucinations. She would have no limitations to handle the usual stresses, changes and demands of gainful employment within her intellectual limitation.

(JS at 8-9 (quoting AR 344).)

Notwithstanding the determination made after analyzing the four functional areas, the regulations provide that if "the evidence otherwise indicates there is more than a minimal limitation in [the claimant's] ability to do basic work activities," the impairment may be considered severe. 20 C.F.R. § 404.1520a(d)(1). Presumably,

---

[4] Dr. Rathana-Nakintara's findings were as follows: "The claimant exhibits no difficulty interacting with the clinic staff or myself. She has no difficulty maintaining composure and even temperament. She has no difficulties in maintaining social functioning. She has no difficulties focusing and maintaining attention. She has mild difficulties in concentration, persistence, and pace. The level of personal independence is adequate. She is intellectually and psychologically capable of performing activities of daily living (ADLs)." (AR 344.)

plaintiff is relying on the statement that "[t]he claimant would have moderate limitations accepting instructions from supervisors and interacting with coworkers and with the public due to her having auditory hallucinations."  However, with the exception of that one statement, Dr. Rathan-Nakintara's opinions are entirely consistent with the ALJ's findings.  Thus, plaintiff's contention essentially reduces to a claim that the ALJ should have provided greater weight to the statement that plaintiff would have moderate limitations accepting instructions from supervisors and interacting with coworkers and with the public.

However, given that the ALJ found other impairments to be severe, whether she found the mental impairments to be severe is irrelevant.  Under the regulations, once having found a severe impairment, the ALJ considers the impact of all medically determinable impairments, severe and non-severe, in formulating the residual functional capacity of the claimant.  20 C.F.R. § 416.945(a)(2).  The ALJ specifically found that plaintiff's medically determinable impairments included the mental impairments of mood disorder and psychotic disorder.  (*See* AR 14.)  Therefore, she was required to consider what impact, if any, plaintiff's mental impairments in combination with her other impairments had on her ability to work.

Here, the ALJ did not expressly address that issue.  However, it would be fruitless to remand this action based on that failure.  Plaintiff testified that most of her symptoms were controlled by her medication.  Plaintiff also did not mention any auditory hallucinations in her testimony.  Given the overall tenor of Dr. Rathan-Nakintara's findings on examination, the State Agency psychological consultants' findings (which mentioned the auditory hallucinations but did not attribute any limitation to them), and plaintiff's failure to even mention the auditory hallucinations as occurring, let alone limiting her functioning in any respect, the Court finds that the ALJ's failure to expressly address the auditory hallucinations was harmless error.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted) (error is harmless where court

/ / /

"able to conclude from the record that the ALJ would have reached the same result absent the error").

Having found that the ALJ properly attributed no limitations to plaintiff's mental impairments, plaintiff's contention that the ALJ erred in her finding that the mental impairments did not satisfy the durational requirement is moot.

B.  Whether the ALJ Failed to Properly Reject the Opinions of Dr. Pechman.

1.  Background

On August 11, 2009, Dr. David B. Pechman examined plaintiff in connection with plaintiff's Workers' Compensation claim. (AR 408-58.) Dr. Pechman also examined plaintiff's medical records, including imaging studies that revealed degenerative changes in plaintiff's cervical, thoracic, and lumbar spine. (AR 421-26.) Overall, Dr. Pechman determined that plaintiff's condition is "permanent and stationary"[5] with respect to her back impairments. (AR 453.) Moreover, the ALJ found that plaintiff's cervical and lumbar impairments preclude plaintiff from performing "heavy work." (AR 455.)

In her September 9, 2014, decision, the ALJ assigned "little weight" to Dr. Pechman's opinions that plaintiff's condition is "permanent and stationary." (AR 20.) In this regard, the ALJ found the following:

> Dr. Pechman performed an evaluation in relation to a workers' compensation claim. Medical reports generated in the context of a workers' compensation claim are adversarial in nature. The physicians retained by either party in the context of workers' compensation cases are often biased and do not provide truly objective opinions. The claimant's treating physician in the context of a workers' compensation claim often serves as an advocate for the

---

[5] For the purposes of workers' compensation, a disability is considered "permanent and stationary" when the impairment or disability is not expected to improve with further medical treatment. *See Gangwish v. Workers' Compensation Appeals Board*, 89 Cal. App. 4th 1284, 1290 n.7 (2001).

7

claimant and describes excessive limitations to enhance the claimant's financial recovery. Also, the definition of disability in a workers' compensation case is not the same as a Social Security disability case. Workers' compensation cases look only at the claimant's ability to return to the job being performed at the time of the injury. . . . Moreover, Dr. Pechman's opinion is not consistent with the evidence as a whole.

(*Id.*)

2. Analysis

The ALJ improperly rejected Dr. Pechman's opinions. The ALJ's first reason, that Dr. Pechman's report was generated in the workers' compensation context, was not a permissible reason to reject his opinions. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); *see also Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 239 (9th Cir. 2005) (permitting rejection of workers' compensation opinion only when the ALJ points out "evidence of the circumstances under which the report was obtained and its consistency with the remainder of the record can constitute an acceptable basis for assessing its reliability."). The ALJ's second reason, that Dr. Pechman's opinion is "not consistent with the evidence as a whole," also fails because the ALJ failed to meaningfully discuss how evidence in the record undermines Dr. Pechman's opinion, and instead offered only his conclusion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are . . . contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . . The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.").

However, the ALJ's failure to properly reject Dr. Pechman's opinions was harmless. Dr. Pechman's opinion that plaintiff is permanent and stationary is only a

finding that plaintiff's condition is not expected to improve. It does not show that plaintiff is more limited than assessed in the RFC. Aside from the permanent and stationary determination, Dr. Pechman's only other assessment of plaintiff's functional limitations was that plaintiff cannot perform "heavy work." However, even assuming a preclusion from "heavy work" in the Workers' Compensation context is more restrictive than that same limitation in the Social Security context, plaintiff has not persuasively demonstrated that such a limitation would further reduce her RFC. Indeed, the ALJ limited plaintiff to "light work," as described in the Social Security context, along with numerous other limitations, none of which a preclusion from "heavy work" would seemingly affect. Because plaintiff has not shown that full consideration of Dr. Pechman's opinions would alter the ALJ's RFC determination or ultimate decision, the ALJ's failure to properly reject those opinions was harmless. *See Molina*, 674 F.3d at 1115; *Cantrall v. Colvin*, 540 F. App'x 607, 609 (9th Cir. 2013) (finding ALJ's error to account for doctor's opinions harmless where plaintiff failed to show whether consideration of those opinions would alter the ALJ's RFC determination).

## CONCLUSION

For the foregoing reasons, the judgement of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: November 16, 2017

                                          /S/FREDERICK F. MUMM
                                            FREDERICK F. MUMM
                                      United States Magistrate Judge